UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


CHARLENE SAUNDERS, as guardian and
conservator of THOMAS SAUNDERS,

                Plaintiff,        Case No. 16-cv-14176[1]
                                        Honorable Thomas L. Ludington

v.

THE TJX COMPANIES, INC. FLEXPLUS
PLAN and CITIZENS INSURANCE
COMPANY OF THE MIDWEST,

                Defendants.

_____/

**ORDER GRANTING TJX'S MOTION FOR JUDGMENT ON THE PLEADINGS,
DENYING CITIZENS' MOTION FOR SUMMARY JUDGMENT, DENYING MOTION
TO DISMISS AS MOOT, AND GRANTING MEDICAL PROVIDER'S MOTION FOR
SUMMARY JUDGMENT IN PART**

      This case arises out of a car accident that occurred on January 9, 2015. Thomas Saunders

was crossing the street in a crosswalk at the corner of Saginaw Road and Main Street in Midland,

Michigan, when he was struck by a vehicle owned and operated by Daniel James Girard.

Thomas Saunders suffered catastrophic injuries leaving him incapacitated. He received extensive

medical treatment at Mary Free Bed Rehabilitation Hospital, Mary Free Bed Medical Group, and

Covenant Medical Center (collectively, the "Medical Providers"). Between February 2015 and

May 2016, the Medical Providers collectively incurred approximately $750,000 in charges for

Thomas Saunders' treatment.

      Charlene Saunders is Thomas Saunders' mother, legal guardian, and appointed

conservator. Charlene Saunders pursued a third party no-fault action for noneconomic damages

against Mr. Girard on behalf of Thomas Saunders, and ultimately reached a settlement

---

[1] Consolidated with *Mary Free Bed Rehabilitation Hospital, et al., v. Citizens Insurance Company of America, et al.*
(Case no. 17-cv-10826).

agreement. On October 31, 2016, the Midland County Probate Court issued an order approving the settlement of the tort claim against Mr. Girard. Mr. Girard's liability insurer was Citizens Insurance Company of the Midwest.

Ms. Saunders was a participant in her employer's health benefit plan, the TJX Companies, Inc. FlexPlus Plan (the "TJX Plan" or "TJX"). Thomas Saunders was a covered individual under the TJX Plan. Ms. Saunders was also insured under a no-fault automobile insurance policy issued by Citizens Insurance Company of the Midwest (the "Citizens Policy") pursuant to the Michigan No-Fault Act, M.C.L 500.3101 et seq. Thomas Saunders was also a covered individual under the Citizens Policy. Both the TJX Plan and the Citizens Policy contain coordination of benefits (COB) provisions purporting to exclude coverage for benefits covered under other plans.

TJX entered into an administrative services contract (ASC) with Blue Cross and Blue Shield of Massachusetts, Inc. (BCBSMA), under which BCBSMA acted as TJX's third party claims administrator. Between April and August of 2015, the Medical Providers sent BCBSMA billing forms, itemized statements, and medical records documenting the claim for Mr. Saunders' treatment. BCBSMA paid some of these charges before it determined that Mr. Saunders' was covered under a no-fault auto insurance policy with Citizens, though the amount paid is not reflected in the parties' papers. The Medical Providers also furnished Citizens with billing forms, itemized statements, and medical records documenting the claim for Mr. Saunders' treatment. Citizens did not furnish payment for these charges.

**I.**

**A.**

This case involves two separate actions: one initiated by Charlene Saunders (the Saunders Action) (16-14176) and one initiated the Medical Providers (the MFB Action) (17-10826). On September 13, 2017, well into the proceedings, the parties stipulated to consolidate the cases. ECF No. 29. Both actions involve at least the same core legal question: whether the TJX Plan or Citizens is the primary insurer responsible for Saunders' medical expenses. All parties have filed their own substantive claims for relief addressing the priority issue including: Saunders' complaint against TJX and Citizens; TJX's crossclaim against Citizens; Citizens' crossclaim against TJX; and the Medical Providers' complaint against TJX and Citizens. The following is a brief summary of the pleadings.

On November 29, 2016, Plaintiff Charlene Saunders (Saunders), as guardian and conservator for Thomas Saunders, filed a complaint against the TJX Plan and Citizens. Compl., ECF No. 1. Count I seeks to enforce the terms of the TJX Plan pursuant to ERISA, 29 U.S.C. § 1132 and seeks a determination of whether Citizens' PIP coverage or the TJX Plan is the primary insurer. *Id.* at 12. Count II seeks to enjoin the TJX Plan from asserting any right to reimbursement from funds Saunders' obtained in his third party tort action against the driver, Mr. Girard. *Id.* at 14. Count III seeks a determination that, if Saunders must reimburse the TJX Plan from his tort recovery, Saunders is entitled to reimbursement from Defendant Citizens for any expenses he must repay to the TJX Plan. *Id.* at 16.[2]

On December 8, 2016, The Medical Providers filed a separate action in the Midland County Circuit Court, which was removed to this Court on March 15, 2017. ECF No. 1. The

_____

[2] As explained below, no party has sought judgment on Counts II or III.

Medical Providers also seek a determination as to whether Citizens or the TJX Plan is primary. Additionally, the Medical Providers seek a money judgment against the party deemed primary, directing them to pay past due medical expenses, interest, costs, and fees. ECF No. 17.

On August 28, 2017, Citizens filed a crossclaim against the TJX Plan. Counts I and II seeking declaratory relief that the TJX Plan is first in priority. ECF No. 22. Count III seeks a declaration that, if Saunders must reimburse the TJX Plan out of his tort recovery, that Citizens is not liable to Saunders for reimbursement. *Id.* at 17.[3]

On August 28, 2017, the TJX Plan filed its own crossclaim against Citizens.[4] ECF No. 23. The TJX Plan seeks declaratory relief that Citizens is primarily liable for the payment of Saunder's medical expenses, and seeks to recover reimbursement from Citizens for all amounts paid for Saunders' medical expenses.[5] TJX also asserts a counterclaim against Saunders to recover the medical expenses BCBSMA paid for Saunders' treatment. ECF No. 24.[6] TJX argues it is entitled to reimbursement for those medical expenses from Saunders' tort recovery.

**B.**

All four of the parties' dispositive motions address the priority issue. On March 24, 2017, Defendant TJX Plan moved to dismiss count I of the Saunders Complaint for failure to state a claim.[7] ECF No. 13. TJX argues that the TJX Plan contains a coordination of benefits (COB)

---

[3] The parties have not sought judgment on count III.
[4] TJX also filed a counterclaim against Saunders for reimbursement from his tort claim, but has not requested judgment on that claim.
[5] In the MFB Action, Citizens filed a crossclaim against BCBSMA and the TJX Plan, which is substantially identical to the crossclaim filed in the Saunders action. ECF No. 19 (17-10826); ECF No. 22 (16-14176). BCBSMA and the TJX Plan also filed a crossclaim against Citizens, which was substantially identical to the crossclaim filed in the Saunders action. ECF No. 20 (17-10826); ECF No. ECF No. 22 (16-14176). BCBSMA and TJX then moved for judgment on the pleadings on their crossclaims and Citizens' crossclaims. The brief in support is substantially identical to brief contained in the motion for judgment on the pleadings filed in the Saunders case. ECF No. 24 (17-10826); ECF No. 27 (16-14176).
[6] TJX has not sought judgment on the counterclaim against Mr. Saunders.
[7] A 12(b)(6) motion is perhaps an unusual vehicle to address Count I of the Saunders complaint, as Saunders is not seeking a judgment against TJX, but a declaration as to which entity is primary. Indeed, the brief in support of TJX's motion to dismiss reflects that they in fact concur in the relief sought by Saunders in count I his complaint, namely

provision that excludes coverage for benefits payable under any other health plan. TJX states that the TJX Plan is a self-funded ERISA plan governed by ERISA and federal common law. As such, TJX contends that the Michigan No-Fault act is preempted by ERISA, that the TJX Plan's COB provision controls, and that Citizens is primarily liable for the Medical Provider's charges. The TJX Plan then moved for judgment on the pleadings with respect to the crossclaim for declaratory relief on the priority issue. ECF No. 27. The brief in support of TJX's motion for judgment on the pleadings is substantially identical to the brief in support of its motion to dismiss Saunders' complaint.

On September 21, 2017, Citizens moved for summary judgment on counts I and II of its crossclaim.[8] ECF No. 34. Citizens does not contest that ERISA preempts the Michigan No Fault Act, and that the Citizens Policy's COB provision would be preempted by a conflicting, unambiguous provision in an ERISA plan. *Id.* at 12. Citizens does contend that, applying the federal common law of contract construction, the TJX Plan is ambiguous. *Id.* at 15–20. Citizens contends the Preferred Provider/Benefit Description of the TJX Plan conflicts with the Summary Plan Description (SPD) *Id.* at 21–24. Citizens also argues that neither TJX's SPD nor the TJX Plan Benefits Description expressly disavow primary coverage or subordinate itself to a Michigan no-fault policy. *Id.* at 21–24. Accordingly, Citizens argues that its COB provision controls, and that the TJX Plan is primarily liable for payment of Saunders' medical expenses. *Id.*

---

that the court enforce the terms of the TJX plan and adjudicate the priority dispute. In fact, TJX requested identical relief in its own crossclaim against Citizens. For the sake of clarity, that crossclaim will be resolved on the merits. Its resolution, in turn, will moot the motion to dismiss as to count I. The motion to dismiss does not address counts II or IIII of the Saunders' complaint.

[8] The motion does not address count III of Citizens' crossclaim, which seeks declaratory judgment that Citizens is not liable to reimburse Saunders if Saunders must reimburse TJX out of his third party tort recovery.

On October 12, 2017, the Medical Providers moved for summary judgment on their claims against TJX and Citizens, seeking to recover from the entity deemed primary. ECF No. 41. The Medical Providers argue that their charges are not in dispute. They also seek penalty interest under M.C.L. 500.3142 if Citizens is found to be the primary insurer, as a non-fault insurer cannot delay payment based on a priority dispute without subjecting itself to penalty interest.

The following two motions will be addressed first: Defendant TJX and BCBSMA's motion for judgment on the pleadings with respect to the crossclaim (ECF Nos. 27, 32); and Defendant Citizens' motion for summary judgment with respect to the crossclaim. (ECF No. 34). The adjudication of these two motions will resolve the priority dispute. Accordingly, Defendant TJX's motion to dismiss Saunders' complaint (ECF No. 13) will be denied as moot. Finally, Plaintiff Medical Providers' motion for summary judgment on its claims against Citizens, BCBSMA, and TJX (ECF No. 41) for payment of medical expenses, interest, costs, and fees will be addressed.[9]

## II.

### A.

TJX moves for judgment on the pleadings with respect to its crossclaims. "The standard of review for a [motion for] judgment on the pleadings [under rule 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Courts must view the pleadings in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine

---

[9] As discussed above, this opinion will not address whether any insurance carrier can recover from Saunders' third party tort recovery for non-economic damages. Nor will this opinion address who is liable to reimburse whom in the event any entity may be able to recover against that third party tort recovery. This issue is raised in counts II and III of Saunders' complaint, count III of Citizens' crossclaim, and in TJX's counterclaim against Saunders. The parties have not sought judgment with respect to those counts.

whether the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007). It is well established that, when a document is referred to in the pleadings and is integral to the claims, it may be considered by the court without converting a motion to dismiss into one for summary judgment. *Id.*

**B.**

TJX moves to dismiss Saunders' complaint for failure to state a claim. A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

**C.**

Citizens moves for summary judgment on counts I and II of its crossclaim, and the Medical Providers move for summary judgment on their amended complaint. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). "The party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.

Both the TJX Plan and the Citizens Policy contain a COB provision purporting to exclude coverage for benefits covered under other plans.

### A.

An attachment to the Citizens Policy contains the following language describing the policy holder's option to choose from full coverage (uncoordinated) or excess coverage (coordinated):

> **Personal Injury Protection - Medical Options** - You may choose between full and excess coverage. Full coverage is for those who have no other health benefit coverage, as well as those covered under Medicare. Excess coverage is for those who have other health coverage and choose to collect from that coverage first in case of an auto accident. Excess coverage is offered at a reduced premium.

Citizens Mot. Summ. J., Ex. A at PGID 1671. The Personal Auto Policy Declarations reflect that

Ms. Saunders chose excess (coordinated) coverage: "Personal Injury Protection: Medical Excess

$300 Deductible." *Id.* at PGID 1677. Accordingly, the Personal Injury Protection Coverage

contains the following COB provision:

> **B.** We do not provide Personal Injury Protection Coverage for:
> **1.** Medical expenses for you or any "family member" when Excess
> Benefits for medical expenses is indicated in the Declarations:
> **a.** To the extent any similar benefits are paid, payable or required
> to be paid under the provision of any valid and collectible:
> i. individual, blanket or group accident or disability
> insurance, health maintenance organization, or similar
> insurance or health plan;
> ii. hospital, medical, surgical or similar insurance or
> reimbursement plan;
> iii**.** worker's disability compensation or disability laws or a
> similar nature or any other state or federal government
> law;
> iv. automobile or premises insurance affording medical
> expense benefits.
> **b.** To the extent similar benefits are available to you or any "family
> member" and for the reason those benefits are foregone, waived, ignored,
> underutilized, or otherwise not accessed.
> If you elect excess coverage for medical expenses, any amount payable
> shall be subject to a $300 deductible. However, any amount payable as
> medical expenses by any source, other than under this policy, shall be
> credited toward satisfying this deductible requirement.

*Id.* at PGID 1712, ECF No. 34-2.

It is undisputed that Citizens Policy's COB provision excludes from coverage medical

expenses covered under other plans, in accordance with Mich. Comp. Laws § 500.3109a. *See*

Mot. Dismiss at 14, ECF No. 13. It is also undisputed that the TJX Plan is a health plan that falls

within the scope of the exclusion set forth at section B of the Citizens Policy's Personal Injury

Protection Coverage (quoted above). *See Id.*; Citizens Mot. Summ. J., Ex. A at PGID 1712.

**B.**

The TJX Plan is a self-funded employee benefit plan, administered by BCBSMA, and governed by the Employee Retirement Income Security Act of 1974, ("ERISA") 29 U.S.C. § 1001 et seq. *See* Mot. Dismiss Ex. 2 (ASC), ECF No. 13-2; ECF No. 23-2, 6. The TJX Plan has separate coordination of benefits provisions in its Summary Plan Description (SPD) and its Benefit Description[10], which do not contain identical information. The SPD contains the following COB provision:

> FlexPlus coordinates benefits with other health care plans. This means that when the FlexPlus Plan pays benefits after your other plans, the total benefits paid from all the plans combined may not total more than the amount FlexPlus would have paid on its own. Medical expenses that qualify for Coordination of Benefits are any necessary and reasonable expenses for medical and dental services, treatment or supplies, covered at least in part, under one of the health care plans.
>
> Your benefits will be adjusted if benefits are payable under another plan providing benefits for, or by reason of, hospital, medical, dental or other health care diagnosis or treatment. This includes:
>
> - Coverage under any form of insurance, including non-profit dental service, non-profit medical service, group practice or any form of prepayment insurance coverage.
> - Coverage under any health maintenance organization plan or other prepaid health care plan.
> - Coverage under any labor management trusteed plan, union welfare plan
> - Coverages under any governmental plan or program, or coverage required by statute to be offered to potential insureds, whether or not such insureds have the option of declining such coverage or of purchasing such coverage subject to mandatory or optional deductibles, including but not limited to: personal injury protection coverage under Massachusetts G.L. c90, s. 34A and medical payment coverage ("Medpay Coverage") under Massachusetts law, or *similar provisions* of subsequent

---

[10] The Welcome! Page of the Benefits Description bears a print date of October 1, 2016. TJX filed a sworn declaration that the COB provision for the policy year in question was identical to the 2016 copy attached to the motions, and the 2012 copy attached to the declaration. ECF No. 18-1, Ex. 1. As the plan documents are referred to in all complaints, counterclaims and crossclaims in this case, and they are integral to all parties' claims, consideration of all such documentation is appropriate on 12(b) and 12(c) motions without converting such motions into motions for summary judgment. Furthermore, as addressed herein, the legal conclusions regarding the plan documents, and their impact on the parties' rights and obligations, remains the same regardless of the legal standard.

statutes *or statutes of other jurisdictions*; *and provisions of a motor vehicle, homeowner's, property and casualty or any other insurance policy covering hospital, medical, dental or other health care expenses without regard to fault.*

*Id.* Ex. C (SPD) at 119, ECF No. 34-4 (emphasis added).

The TJX Plan Benefit Description contains the following provision COB provision:

Blue Cross and Blue Shield will coordinate payment of covered services with hospital, medical, dental, health, or other plans under which you are covered. Blue Cross and Blue Shield will do this to make sure that the cost of your health care services is not paid more than once. Other plans include: personal injury insurance; automobile insurance, including medical payments coverage; homeowner's insurance; and other plans that cover hospital or medical expenses …

Under COB, the plan that provides benefits first is known as the primary payor. And the plan(s) that provide benefits next are known as the secondary payor(s). When coverage under this health plan is secondary, no benefits will be provided until after the primary payor determines its share, if any, of the liability. Blue Cross and Blue Shield decides which plan is the primary and secondary payor. To do this, Blue Cross and Blue Shield relies on the COB regulations issued by the Massachusetts Division of Insurance (see the COB rules described below). To the extent state law does not govern this health plan, however, state law will not limit Blue Cross and Blue Shield's discretion to determine which is the primary and secondary payor. *For example, this health plan is not subject to Massachusetts requirements concerning coordination between no-fault automobile personal injury protection (PIP) and health insurance, and if PIP is available, this health plan will not pay benefits until PIP is exhausted.*

This health plan will not provide any more coverage than what is described in this benefit booklet. Blue Cross and Blue Shield will not provide duplicate benefits for covered services. If Blue Cross and Blue Shield pays more than the amount that it should have under COB, then you must give that amount back to Blue Cross and Blue Shield. Blue Cross and Blue Shield has the right to get that amount back from you or any appropriate person, insurance company, or other organization.

*Id.* Ex. D (Benefits Description) at 61, ECF No. 34-5 (emphasis added).

## IV.

Mich. Comp. Laws § 500.3109a provides that PIP providers may exclude coverage for benefits payable under another plan:

> An insurer providing personal protection insurance benefits under this chapter may offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. Any deductibles and exclusions offered under this section are subject to prior approval by the commissioner and shall apply only to the benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household.

Mich. Comp. Laws Ann. § 500.3109a (West).

According to the Michigan Supreme Court, when a no-fault policy's COB provision conflicts with the COB provision of a health insurance policy, the conflict is resolved in favor of the no-fault policy. *Fed. Kemper Ins. Co. v. Health Ins. Admin., Inc.*, 424 Mich. 537, (1986), *overruled by Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.*, 443 Mich. 358 (1993). However, a different rule applies to ERISA health plans. In *Auto Club* the Michigan Supreme Court held that an unambiguous COB provision in an ERISA plan prevails over the COB provision of a conflicting no-fault policy, partially overruling *Federal Kemper*. *Auto Club*, 443 Mich. At 387. That is, the no-fault carrier is the primary payor. The court reached its conclusion on the basis the Michigan No-Fault Act was preempted by ERISA. *Id.*

The sixth circuit has cautioned, however, that ERISA plans do not prevail in all cases. *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371, 373–74 (6th Cir. 1994). Rather, courts are to resolve the conflict between competing COB provisions under the federal common law of ERISA. *Id.* "The salient rule emerging from this federal common law is that where there is an irreconcilable conflict between facially valid coordination of benefits ("COB") clauses in an ERISA employee benefit plan and a traditional insurance policy, the terms of the employee benefit plan COB clause must be given full effect." *Travelers Ins. Co. v. Auto-Owners Ins. Co.*, 971 F. Supp. 298, 300 (W.D. Mich. 1997) (citing *Thorn Apple*, 31 F.3d at 373).

An irreconcilable conflict only exists where an ERISA plan's COB provision *expressly disavows* primary coverage. *See Thorn Apple*, 31 F.3d at 375; *Primax Recoveries v. State Farm Mutual*, 147 F. Supp. 2d 775, 782–84 (E.D. Mich. 2001); *Travelers Ins. Co. v. Auto-Owners Ins. Co.*, 971 F. Supp. 298, 300 (W.D. Mich. 1997). Only ERISA plans with unambiguous COB clauses receive the benefit of secondary payor status. *Thorn Apple Valley*, 31 F.3d at 373. "Plan language will be found ambiguous only if it is subject to two reasonable interpretations." *Travelers*, 971 F. Supp. at 301.

ERISA plan language is to be construed so as to protect the interests of participants and to protect plans from unanticipated claims. *Id.* Supreme Court precedent supports the notion that ERISA plan language is to be construed using traditional methods of contract interpretation to ascertain plan meaning. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). Accordingly, "the Court's paramount responsibility in construing plan language is to ascertain and effectuate the underlying intent." *Travelers*, 971 F. Supp. at 300 (citing *Sprague v. General Motors Corp.*, 92. F.3d 1425, 1434 (6th Cir. 1996)).

## V.

The relevant TJX Plan documents containing a COB provision are the Benefits Description and the Summary Plan Description (SPD).

## A.

The TJX Plan's Benefit Description contains a COB provision that is unambiguous, and expressly disavows no fault coverage. The court in *Travelers* highlighted five aspects of the ERISA plan, leading to its conclusion that the plan was unambiguous and expressly disavowed primary coverage:

> The plan COB clause, in relevant part: (1) provides that it 'will coordinate the
> health benefits payable under this Plan with similar benefits payable under other

plans'; (2) defines 'other plans' as including coverage provided pursuant to a no-fault automobile insurance law; (3) purports to eliminate duplicate coverage; (4) purports to coordinate available coverages, setting forth rules for determining which coverage is primary (paying benefits first) and which is secondary; and (5) providing, among such rules, that if no other rule applies, that coverage is primary which has covered the person for the longest time.

*Travelers Ins.*, 971 F. Supp. at 301.

Here, the TJX Plan's COB provision meets the first three criteria. First, it provides that it "will coordinate payment of covered services with hospital, medical, dental, health, or *other plans* under which you are covered." Benefits Description at 61, ECF No. 34-5 (emphasis added). Second, it defines "other plans" to include "automobile insurance, including medical payments coverage" and provides the following example: "[f]or example, this health plan is not subject to Massachusetts requirements concerning coordination between no-fault automobile personal injury protection (PIP) and health insurance, and if PIP is available, this health plan will not pay benefits until PIP is exhausted." *Id.* Third, it purports to eliminate duplicate coverage: "Blue Cross and Blue Shield will not provide duplicate benefits for covered services." *Id.*

With respect to the fourth and fifth criteria, the TJX Plan contains a section entitled "COB Rules to Determine the Order of Benefits." *Id.* This "Order of Benefits" section sets forth rules for determining which coverage is primary and provides that, if no other rule applies, primary coverage is that which has covered the person for the longest time. *Id.* Notably, that section does not specifically exclude excess automobile insurance. That is, the "Order of Benefits" section does not indicate where no-fault insurance falls in the priority hierarchy. Nevertheless, the absence of an express disavowal in the "Order of Benefits" section is not a fatal flaw where the benefit description otherwise clearly disavows no-fault coverage:

> Plaintiff would have the Court find that because the COB section does not indicate in the "Order of Benefit Determination" portion that the Plan is secondary to an automobile insurance policy, that creates an ambiguity with

regard to the rest of the Plan language. However, such an interpretation would ignore the Sixth Circuit's ruling that the terms of the ERISA plan, including its COB clause, must be given full effect. Plaintiff's interpretation would render the rest of the language in the COB section itself meaningless.

*Frankenmuth Mut. Ins. Co. v. Wal-Mart Associates' Health And Welfare Plan*, 182 F. Supp. 2d 612, 619 (E.D. Mich. 2002).

Citizens takes issue with the reference to Massachusetts no-fault law in the Benefits Description's example of "other plans" subject to the COB provision. Citizens notes that "the 'example' does not apply to the instant action as the CITIZENS' policy at issue is a Michigan no-fault automobile policy, not a Massachusetts no-fault automobile policy." Mot. Summ. J. at 21, ECF No. 34. The reference to Massachusetts no-fault law as an example does not create ambiguity when read in light of the entire COB provision. The COB provision cannot reasonably be read to only exclude benefits payable under a Massachusetts no-fault policy. The COB provision notes that benefits will be coordinated with "other plans," defines other plans to include "automobile insurance, including medical payments coverage," and provides an illustrative example. Thus, the COB provision is not reasonably susceptible to multiple interpretations.

**B.**

Citizens also contends that the TJX Plan's Summary Plan Description (SPD) conflicts with the Benefits Description, and fails to expressly disavow primary coverage. The Supreme Court has noted that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan . . ." *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011) (emphasis in original). Nevertheless, SPDs are important to employees, and employers "may not construct SPDs in such a manner that they mislead employees into thinking they have a right to benefits when other

documents obliquely negate those rights." *Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 250 (6th Cir. 1996).

As Citizens notes, the SPD language differs from the Benefits Description in several respects. Yet Citizens points to no misrepresentations or material inconsistencies in the SPD. The SPD states: "[a]ny Plan without a coordinating provision will always be the primary plan and will pay first," whereas the Benefits Description contains no such provision. SPD at 119, ECF No. 34-4. First, in the no-fault context, this provision is superfluous. It is tautological to say that a plan without a coordination of benefits provision will not coordinate benefits, but will be primary. Neither the presence nor absence of this provision from the plan documents changes the legal rights of the beneficiaries or insurer.

Furthermore, this provision does not apply to the priority conflict between the TJX Plan and Citizens, as Citizens does indeed have a coordination of benefits provision. Thus, any inconsistency between the SPD and Benefits Description presents no danger that an insured will be misled regarding their right to benefits nor does it "defeat a reasonable expectation of coverage." *Regents of University of Michigan v. Employees of Agency Rent-A-Car*, 122 F.3d 336, 339 (6th Cir. 1997).

Additionally, Citizens notes that the "Birthday Rule" is omitted from the SPD but does appear in the Benefits Description, and that both documents contain inconsistent versions of the priority rule regarding children of separated or divorced parents. These inconsistencies between the SPD and the Benefits Description are immaterial. They do not undermine the Benefits Description's COB, which clearly disavows primary coverage and subordinates itself to no-fault insurance.

To the contrary, when read in its entirety, the SPD actually makes it clearer that the intent of the Benefits Description is to subordinate itself to all no-fault automobile coverage. Specifically, the SPD clarifies the example used in the Benefits Description regarding Massachusetts no-fault law, and makes it clear that the intent of the plan is to subordinate itself to all similar policies, not just Massachusetts no fault policies:

> Your benefits will be adjusted if benefits are payable under another plan . . . This includes: . . . personal injury protection coverage under Massachusetts G.L. c90, s. 34A and medical payment coverage ("Medpay Coverage") under Massachusetts law, *or similar provisions of subsequent statutes or statutes of other jurisdictions; and provisions of a motor vehicle, homeowner's, property and casualty or any other insurance policy covering hospital, medical, dental or other health care expenses without regard to fault.*

*Id.* (emphasis added).

### C.

The COB provision in the Benefits Description is unambiguous. It is susceptible to only one reasonable interpretation, namely that it disavows primary coverage and subordinates itself to no-fault insurance. The Citizens Policy also contains a COB provision that excludes coverage for benefits payable under another plan. Thus, there is an irreconcilable conflict between the Citizens Policy and the TJX Plan. As ERISA preempts the Michigan No-Fault Act, this conflict must be resolved in favor of the TJX Plan, the terms of which "must be given full effect." *Thorn Apple*, 31 F.3d at 374.

The pleadings on the crosslcaims, and the plan and policy documents referenced therein, establish the TJX Plan and BCBSMA's claims as a matter of law, and demonstrate the legal insufficiency of Citizens' claims. No other evidence identified by Citizens affects this conclusion. Thus, Citizens' motion for summary judgment must be denied, as it has not established that it is entitled to judgment.

Accordingly, the TJX Plan and BCBSMA's motion for judgment on the pleadings will be granted, Citizens' crossclaim will be dismissed as to counts I and II, and Citizens' motion for summary judgment will be denied. A declaratory judgment will be entered finding that Citizens is the primary insurer with respect to Saunders' medical expenses arising out of the January 9, 2015 accident, and that BCBSMA (as claims administrator for the TJX Plan) is entitled to recoup from Citizens all amounts it has paid for said medical expenses. *See Travelers*, 971 F.Supp. at 302 (entering declaratory judgment that ERISA plan could recoup from no-fault carrier amounts paid where the court had determined no-fault carrier was primarily liable for medical expenses).

## VI.

The TJX Plan's motion to dismiss Plaintiff Saunders' complaint (ECF No. 13) will be denied as moot. The motion to dismiss only addresses Count I of the complaint, namely the priority issue. *See* note 5, *supra*. Count I is therefore mooted by the above determination that Citizens is the primary insurer. A declaratory judgment on the priority question will be issued. The motion to dismiss did not seek judgment on Count II, though it addresses it in passing. The motion did not address count III.

With respect to count II, the "statement of facts" in the motion to dismiss provides that the TJX Plan "sought reimbursement for medical expenses paid for Mr. Saunders from tort claim proceeds,"[11] and quotes the relevant plan provisions which describe its reimbursement right. Mot. Dismiss at 6. While this is helpful background information, it does establish that Count II fails to state a claim for relief. The "law and argument" section of the motion to dismiss does not

---

[11] The heading of this section reads "The TJX Plan Asserts Entitlement to Proceeds from Tort Claim against Mr. Girard." The ensuing paragraph, however, does not assert any entitlement, but simply provides a background summary of events leading up to this case. TJX did assert an entitlement to Saunders' tort proceeds in its counterclaim (ECF No. 24), but never moved for judgment on that counterclaim.

make any mention of count II. Finally, the statement of issue presented and the requested relief are directed at count I only.

## VII.

Plaintiff Medical Providers move for summary judgment on their claims against Defendants Citizens, TJX Plan, and BCBSMA. Mot. Summ. J., ECF No. 41. The Medical Providers seek a determination on the priority issue, a money judgment against the party found to be primarily liable, as well as interest, costs, and attorney fees. The motion will be granted in part, and denied in part.

## A.

As discussed above, a declaratory judgment will be entered finding that Citizens is primarily liable for payment of Saunders' medical expenses incurred by the Medical Providers. The Medical Providers are pursuing this claim against Citizens pursuant to three assignment agreements, whereby Charlene Saunders assigned to the Medical Providers her interest in her right to collect no-fault benefits under her Citizens Policy. Am. Compl. Ex. B, ECF No. 17-3 (17-10826). The Medical Providers claim the following amounts to be due and owing, adjusted for contractual discounts, and exclusive of statutory interest: Mary Free Bed Hospital: $480,055.49 in Facility Charges and $242.97 in psychology charges: MFB Medical Group: $1,618.64; Covenant Medical Center: $216,271.25. Mot. Summ. J. at 21–22.

Pursuant to rule 56(c)(1)(a) and (c)(4), the Medical Providers support their claims by declarations setting forth facts that would be admissible in evidence. The declarations are based on personal knowledge of individuals competent to testify regarding the charges due and owing. Mary Free Bed Rehabilitation Hospital supports its claim by a sworn declaration of its Patient Financial Services Manager, Laura Hoover. *Id.* Ex. 1 (Hoover Decl.), ECF 41-2. Mary Free Bed

Medical Group supports its claim by a sworn declaration of its Revenue Cycle Manager, Laura Hoover. *Id.* Ex. 2, ECF No. 41-3 (Second Hoover Decl.). Covenant Medical Center supports its claim by a sworn declaration of its Central Business Office Manager, Coni Eller. *Id.* Ex. 3 (Eller Decl.), ECF No. 41-4. All three declarations set forth the dates Thomas Saunders was treated at the respective facilities, the amount of charges incurred, and that the charges were reasonable. All three affidavits also note that the Medical Providers furnished billing forms, medical records, and itemized statements to Citizens documenting the claimed amounts, and that Citizens failed to pay any of the charges billed.

Citizens argues that the Medical Providers have failed to satisfy their burden of proof under MCL 500.3107 to establish that expenses were incurred for "reasonably necessary products or services." Resp. at 12, ECF No. 45 (quoting *Hamilton v AAA of Michigan*, 248 Mich. App. 535, 543 (2001)). Citizens characterizes the proofs offered by the Medical Providers as "self-serving statements" regarding the charges incurred and "bald assertions" by the declarants that those charges were reasonable. *Id.* at 15. Whether or not these declarations are "self-serving," the Medical Providers have met their burden to identify materials in the record supporting their claim, and demonstrating an absence of dispute as to a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden thus shifts to Citizens to set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). Citizens has not done so. Citizens simply notes that it "has never admitted that the charges were reasonable, and has never waived its defenses under the Michigan No-Fault Act." *Id.* Facing a motion for summary judgment, Citizens cannot merely rest on the denials in its pleading. *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)).

Furthermore, the fact that Citizens has not offered any facts justifying its opposition to the motion is not excused by a lack of discovery. Rule 56(d) provides that a non-movant may demonstrate "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The court may then defer or deny the motion or allow time to take discovery. Fed. R. Civ. P. 56(d)(1)-(2). Citizens has provided no such justification here. The undisputed facts demonstrate that the Medical Providers furnished Citizens with billing forms, medical records, and itemized statements documenting dates of service and claimed expenses. Mot. Summ. J. Ex. 1-3 (Declarations).

Citizens does not contend that any relevant records are missing, erroneous, inadequate, or incomplete. Nor does Citizens identify any other information it wishes to obtain. Rather, Citizens suggests that it simply has not yet reviewed the records: "In the event that this Court should determine that Defendant Citizens is first in priority, then Citizens would be entitled to examine all of the charges in order to confirm the reasonableness and relatedness of the charges." *Id.* at 16. Citizens has had ample opportunity to review the charges, and identifies no specific dispute.[12] Accordingly, summary judgment will be granted for the Medical Providers with respect to the charges incurred.

**B.**

Summary judgment will be denied as to interest, costs and attorney fees. With respect to penalty interest under M.C.L. 500.3142, the Medical Providers make two arguments: 1) that a no-fault carrier may not rely on a priority defense without subjecting itself to penalty interest,

---

[12] TJX, in contrast, identifies disputes with respect to the provider's charges, the contractual discount, and identifies additional records needed to evaluate the claim which it has not yet had access to. TJX also attached declarations of BCBSMA employees, including a fraud investigator, who has reviewed the provider's records and noted aberrant information. Citizens, on the other hand, does not provide a single attachment to its response to the motion for summary judgment, identifies no dispute with the provider's records, and advances no legal argument as to why summary judgment should be denied.

and 2) that penalty interest is automatic, irrespective of good faith, where a no-fault carrier refuses to pay benefits and is later found to be liable. Mot. Summ. J. at 20. The Medical Providers focus on the *recoverability* of penalty and statutory interest, but not on the question of *who* may recover that interest.

The cases relied upon by the Medical Providers all predate the *Covenant* decision. In *Covenant*, the Michigan Supreme Court held that a healthcare provider possesses no statutory cause of action against an insurer for recovery of PIP benefits, overruling a long line of appellate precedent. *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 500 Mich. 191, 895 N.W.2d 490 (2017). The court noted that its conclusion "is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Covenant*, 895 N.W.2d at 510.

Accordingly, the Medical Providers in this case are pursuing a claim for benefits pursuant to a contract right obtained in an assignment agreement with Charlene Saunders. The Medical Providers state that they are entitled to penalty interest as assignees, but offer no support for this proposition. Notably, they point to no language in the assignment agreement purporting to assign them the insured's right to recover statutory or penalty interest. Indeed, the assignment agreements contain no such language, though they specifically assign the insured's rights "to collect no-fault insurance benefits" and "to collect attorney fees." Am. Compl. Ex. B, ECF No. 17-3 (17-10826).

As assignees of the insured, the Medical Providers do not stand in the shoes of the insured for the purposes of asserting all of his statutory causes of action. Their rights are circumscribed by the terms of the assignment agreement. Furthermore, they can only acquire rights that are assignable under Michigan Law, which does not apply to all of the insured's

rights. *See Covenant*, 895 N.W.2d at 510 (noting that the assignment of future benefits is prohibited by MCL 500.3143.

The Medical Providers have not established their entitlement to statutory or penalty interest as assignees of the insured, and summary judgment will be denied as to these claims. Summary judgment will also be denied as to the Medical Providers' request for attorney fees pursuant to MCL 500.3148. The Medical Providers have not identified any evidence that Citizens has acted in bad faith or unreasonably delayed payment. To the contrary, Citizens asserted a good faith claim that the TJX Plan is primary.

## VIII.

Accordingly, it is **ORDERED** that the TJX Plan and BCBSMA's motions for judgment on the pleadings, ECF Nos. 27, 32, are **GRANTED.**

It is further **ORDERED** that Citizens' motion for summary judgment, ECF No. 34, is **DENIED**, and Citizens' crossclaim, ECF No. 19, is **DISMISSED** as to counts I and II.

It is further **ORDERED** that the TJX Plan's motion to dismiss, ECF No. 13, is **DENIED** as moot.

It is further **ORDERED** that Plaintiff Medical Providers motion for summary judgment, ECF No. 41, is **GRANTED** as to medical expenses incurred, and **DENIED** as to interest, costs, and fees.


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 15, 2017

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager